## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Josue Lopez, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been since March 2018. I am currently assigned to the Immigration Crimes Group in San Juan, Puerto Rico. As a Special Agent (SA) with HSI, I am authorized by law to investigate crimes involving violations of Title 18, Title 8, and Title 19 of the United States Code and to execute warrants issued under the authority of the United States.

2. Prior to my appointment as a Homeland Security Investigations Special Agent, I was appointed in 2008 as a Border Patrol Agent on the southwest border with the United States Border Patrol, San Diego Sector in San Diego, California. As a Homeland Security Investigations Special Agent, I have received formal and on the job training and I am authorized to investigate violations of laws of the United States and to execute and serve any order, subpoena, summons, warrant, or other process issued under the authority of the United States.

3. I am familiar with the statutes of the United States Code, and as a federal law enforcement officer, I have participated in investigations, surveillance, interviews, interrogations, arrests, searches, seizures, administration of oaths, and in taking and considering evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States. Based on my law enforcement experience detailed herein, as well as my training, and experience of other law enforcement officers who are participating in this investigation, serve as the basis for the conclusion set forth herein.

1

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter. I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 8 U.S.C. § 1326(a) & (b)(1) – *Ilegal Reentry of removed alien after a felony conviction* has been committed by Name **Joaquin Alberto GIL DE ROSARIO** ("**GIL DE ROSARIO**").

## **PROBABLE CAUSE**

6. On December 03, 2025, at approximately 7:45 am, Homeland Security Special agents (SAs) and Enforcement Removal (ERO) Officers were conducting immigration inspections in and around the area of Barrio Obrero, Puerto Rico. All the HSI SAs and ERO officers were wearing agency issued equipment and vests with clear police markings for all the public to clearly see. The SAs were also wearing their agencies issued utility belts with all their equipment that was issued by their agencies per the agency's policy.

7. This is a well-known area for subject(s) that do not have any legal immigration status and / or to be present in the United States. Agents have made multiple arrests in this area for immigration violations.

8. While conducting their duties in the area, Agents observed two subjects walking on the sidewalk. Agents stopped their vehicles and three agents exited and approached the two subjects and began a consensual conversation regarding the two subjects' immigration status. Both subjects willingly provided forms of identification. One of the subjects provided his Dominican Republic Consulate

2

identification card (cedula) which identified him as Joaquin **GIL DE ROSARIO**, Hispanic male with a DOB 08/16/1969.

9. Agents asked **GIL DE ROSARIO** if he was ever arrested before. **GIL DE ROSARIO** responded that he was arrested in 2008. During the interaction on the sidewalk Agents performed an immigration examination and inspection where it was determined that **GIL DE ROSARIO** is not a citizen or national of the United States (US) and that he is a citizen and national of Dominican Republic who was and continues to be illegally present in the United States. **GIL DE ROSARIO** was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document, and a valid unexpired passport, or other suitable document, or document of identity and nationality to be enter, pass through, or remain in the United States. **GIL DE ROSARIO** claimed to have been born in Dominican Republic on August 16, 1969.

10. After the Agents determined that **GIL DE ROSARIO** was inadmissibility and illegally present in the U.S., **GIL DE ROSARIO** was served with a warrant of arrest I-200 on scene and was subsequently handcuffed and transported to ERO office located in Guaynabo for processing.

11. The investigation revealed GIL DE ROSARIO has the following criminal history:

    a. On November 7, 1990, a New York state arrest warrant was issued against **GIL DE ROSARIO** in connection to an indictment charging him with criminal sale of a controlled substance in the third degree (cocaine). Records reflect disposition of this case appears pending.

    b. On July 10, 1997, **GIL DE ROSARIO** was arrested in Lowell, Massachusetts for drug trafficking. He was criminally prosecuted and on March 10, 1998, a Massachusetts state court convicted and sentenced him for possession with intent to distribute a Class B controlled substance.

    c. On February 17, 2002, **GIL DE ROSARIO** was charged with theft by unauthorized taking (larceny) in Nashua, NH. Disposition of this case remains unknown.

    d. On March 04, 2002, **GIL DE ROSARIO** was charged and convicted of receiving stolen property in Nashua, NH.

12. The investigation revealed GIL DE ROSARIO has the following immigration history:

    e. On December 1, 1990, **GIL DE ROSARIO** was admitted as a legal permanent resident ("LPR) into the United States. His LPR status was terminated after he was placed in removal proceedings as an alien convicted of, or who admitted to having committed an offense relating to a controlled substance offense when **GIL DE ROSARIO** received criminal convictions for criminal sale of narcotic drugs on March 10, 1998.

    f. On May 22, 2009, the United States Customs and Border Patrol (CBP) encountered **GIL DE ROSARIO** after he entered the United States at San Juan Panamerican dock in Puerto Rico, where he presented himself for inspection as a returning resident of the United States. **GIL DE ROSARIO** was fingerprinted, and a warrant for New York was confirmed. **GIL DE ROSARIO** was initially to be turned over to Puerto Rico Police Extradition Unit to be extradited to New York. **GIL DE ROSARIO** was not extradited and instead was placed in removal proceedings.

    g. On May 23, 2009, **GIL DE ROSARIO** was served with a Notice to Appear before the Immigration Judge and detained. On August 11, 2009, an immigration judge in San Juan, Puerto Rico ordered **GIL DE ROSARIO** removed to the Dominican Republic. On September 11, 2009, **GIL DE ROSARIO** was removed from the United States to the Dominican Republic.

    h. **GIL DE ROSARIO** claimed to have entered the United States without inspection via "yola" at or around Isabela, Puerto Rico, on or about November 1, 2023, without admission or parole. Queries reveal no legal entries to the United States. **GIL DE ROSARIO** has no known ties to the community precluding appropriate law enforcement action. **GIL DE ROSARIO** is currently married to a citizen of the Dominican Republic and has no minor children under care in Puerto Rico.

    i. Record checks also revealed that **GIL DE ROSARIO** has used other names on previous encounters. **GIL DE ROSARIO** has used the following akas: Hector Rodriguez, Frank Gil, Joaquin Del Rosario.

13. Record checks also revealed that as of December 5, 2025, **GIL DE ROSARIO** had not applied requesting permission to enter the United States (Form I-212) before the United States Citizenship and Immigration Services (USCIS). Thus, **GIL DE ROSARIO** has not obtained consent from the Secretary of Homeland Security to enter the United States, nor does he have any immigration documents allowing him to legally enter and/or remain in the United States.

[*space left intentionally blank*]

## CONCLUSION

14. Based on the forgoing, and based upon my training, experience and participation in this and other investigations, I believe that sufficient probable cause exists to demonstrate that **GIL DE ROSARIO** reentered the United States after being removed resulting in violations to 8 U.S.C. § 1326 (a) & (b)(1) – *Reentry of removed alien after a felony conviction*.

Respectfully submitted,

_____
Josue López
Special Agent
Homeland Security Investigations

Sworn pursuant to FRCP 4.1 at 11:32 a.m. by telephone, this 10th day of December, 2025.

_____
Hon. Héctor Ramos-Vega
United States Magistrate Judge
United States District Court
District of Puerto Rico